Melvin Jones v. Charles Beck. Would you please identify yourselves for the record and the party you represent? May it please the court, my name is Lauren Levin, L-E-V as in Victor, I-N, and I, together with Joseph Barabali, represent the plaintiffs in this case, Melvin Jones and Lothar Jones. Good morning, your honors. Karen DeGrand, D-E-G-R-A-N-D, for the appellee, Dr. Charles Beck, Jr. And with me today is trial counsel, Ms. Sherry Arrico. Good morning. We have allotted 30 minutes this morning for this case, but we have a little bit of flexibility because it is the only case on the docket. That 30 minutes' time will be divided equally between the parties. The appellant may reserve some time for the vote. And with that, may it begin. In 15 minutes, I talk really quickly, so it's possible. You may proceed. May it please the court, I've already introduced myself, and my name is Lauren Levin, again. I represent the plaintiffs in this case. With this appeal from their medical negligence case, the plaintiffs are seeking reversal of entry of judgment in favor of the defendant and against the plaintiffs in a new trial based on evidentiary errors and other errors made by the trial court. More specifically, the plaintiffs allege that the trial court abused its discretion by, one, permitting the defendant's experts to testify about the use of a nasogastric tube or NG tube despite lack of an adequate F3 disclosure. Number two, by dismissing Juror London because of her religious fervor and not any bias on the part of the juror. And three, by instructing the jury on the sole proximate cause instruction, absent even a modicum of evidence that the conduct of another physician was the only cause of the plaintiff's injuries. I will address each of these issues before the court in turn, beginning with the defendant's Rule 213 F3 violation. The plaintiffs were not put on notice that the defendant's experts would testify at the time of trial about the use of a nasogastric or NG tube. The defendant disclosed two Rule 213 F3 experts to testify at the time of trial, Dr. Beck and Dr. Soden. Both experts' disclosures were two-and-a-half pages long, single-spaced. Both of their disclosures glossed over the use of an NG tube. What do you mean glossed over? It mentioned it in passing among a litany of other items in a paragraph where it was just disagreements with the plaintiffs' experts. Well, Dr. Soden, he was hired specifically to disagree with the plaintiffs' expert, and Dr. Beck, he denied all allegations of negligence in the plaintiffs' complaint. And these experts were deposed? They were deposed. And did you ask at the deposition what their opinion was regarding the nasogastric tube? Well, Dr. Beck was deposed two times prior to the time any opinion about an NG tube was disclosed by him. Dr. Soden, he was deposed after an opinion about an NG tube was disclosed, and it did not come up at all in the deposition. Well, whose decision was it not to bring it up? It was to us. It was an insignificant opinion. It was all the other opinions listed by them had reasons, bases for the opinion. Was it a significant opinion of your witness? It was. Then why would it not be significant what the other side said about it? Why did it all of a sudden become insignificant when uttered by the other side? First, I want to say that we did not feel it was incumbent upon us to bring out every opinion and the basis for every opinion. We thought it was incumbent based on 213-F3, its explicit mandate, and Rule 213-I, I'm sorry, Rule 213-I, for the defendant if it was important to their defense in the case to bring out the opinion. Are you familiar with the case of Spetzel v. Dillon? I am, Your Honor. Now, if I read that case correctly, and I've read it a number of times in the last year, it was a situation where the expert disclosed that, among other things, that expert had reviewed the medical records, including the x-rays and the MRIs, and that his opinions were based, in fact, in part on those reviews of the records. At the deposition, the opposing attorney chose not to ask the question about what about those MRIs and those x-rays led him to support any basis of his opinions. And then at trial, when the expert witness was asked about what impact those MRIs and those x-rays had, there was an objection by the opposing counsel that he hadn't disclosed that. Well, he had disclosed that he had reviewed that and his opinions were based in part on that. And that is where the appellate court said that Rule 213 should be used not as a sword but as a shield, and the choice not to examine the expert on that does not give you the right to then bar the experts from relying on what was disclosed as one of the bases of his opinion. Can you distinguish that case from this? I believe I can, Your Honor. In that case, the expert disclosed an opinion, and he disclosed the basis for that opinion, which was his review of the x-rays. In this case, we have an opinion, but it's not really even an opinion. Again, to reiterate, it's amongst a list of things that this expert, or both Dr. Beck and Dr. Soden, disagree with Dr. Fortson about. So it kind of got lost in there. And there was no basis for the disagreement, all the more reason. So did you move to strike the offering of the disagreement because there was no disclosure? Now, if you read the Sullivan case, it talks about dropping down to the specifics. If you see a disclosure that isn't adequately supported by what the opinions are, then you could move to strike the opinion. But my problem is that in this case there was neither a motion to strike the opinion, nor was there an inquiry as to the bases at the deposition. And basically you've decided to wait to the trial to, and maybe even in some instances of what you raise, wait to the appeal to raise the faults you find with the disclosure. Regardless of whether the disclosure was adequate or not adequate, the question is, isn't there something that you were required to do to bring that to the court's attention based upon what you view was an inadequate disclosure? My answer to that is no. It's incumbent upon the defendant, pursuant to 213F3 and 213I, that if it's important to their defense in the case, then it should have been disclosed. Then how do you interpret the language that says that you should use 213 not as a sword to keep the things out, but as a shield? What does that mean to you? In this case, it's not about gamesmanship. We had no, we were not trying to use it as a sword. I'm not saying that that's always gamesmanship. What I'm saying is if you feel that the disclosure is not adequate, doesn't that case and the use of that phrase mean that you have to do something to bring it to the court's attention? This isn't a situation where you never knew that this witness was going to opine on this issue because they told you they were going to opine on the issue. They didn't tell you, arguably, the bases of those opinions. And because of that, maybe, or for any other reason, you chose not to inquire or move to strike the opinion for lack of basis until the opinion was sought at the trial. Isn't that a fair representation? There was a motion in Lemony to bar undisclosed 213F3 opinions as well. That should have addressed that. But there was a disclosed opinion. It was the basis of the opinion that you chose not to explore and that arguably they didn't properly disclose the basis of. An opinion without a basis, especially in a medical malpractice case, without a medical foundation is purely speculative. It was meaningless. How can you, counsel, with all due respect, how can you say that it's an opinion without a basis? I'm looking right at the 213s. And page 5, to get, you know, for the record here, the specific opinion that you say was just sort of thrown in there, Dr. Soden disagrees that the standard of care required Dr. Beck to order or place a nasogastric tube or to otherwise decompress the abdomen or to consult the general surgeon any sooner than it was done. That's a pretty specific opinion, an opinion that your expert came up with, that this expert says, no, I disagree with that. I don't think the standard of care requires it. And in the beginning of his opinions, it is stated, based upon his review of these materials, all the records and 213s and other things that he reviewed, and upon his education, training, and experience as reflected in part by his attached curriculum vitae, Dr. Soden is expected to testify to a reasonable degree of certainty, blah, blah, blah, blah, blah. The point is, in there you have the basics. You've got the opinion. You have all of the materials that he relied upon. You have his curriculum vitae. Then the onus is on you to either explore it further, if you want to get more information, or take what you're going to get at trial. But never until the time of trial did the plaintiffs hear for the very first time that the defense argument or the reason why an NG tube should not have been placed, the standard of care did not require it, is because it's in a different part of the anatomy, way far removed from where the perforation was. That opinion did not come in until the time of trial. And with respect to Dr. Beck and Dr. Soden's, their qualifications, their training, education, and experience, that allows them the foundation, the qualifications to testify. All you had to do at the deposition, and I don't know if you took the deposition or Mr. Mirabelli, whoever, all you had to do was ask the witness why. I mean, your witness says that the NG tube was indicated and would have made a difference. It would have enabled them to avoid the bowel perforation. And if this other witness disagrees with it, you could ask him why. How can you say that it wouldn't be of any effect? You didn't ask that question. All of the time, opinions are abandoned by experts. They don't go into them at the time of their deposition, and they don't go into them. I mean, this was your case. I mean, this was your case, right, that you had to go in there, that you have a man who's constipated post-op, that he's on narcotics, and that they're trying to figure out why he's not moving his bowels. There's a question after an enigma, he moves his bowels a little bit, whatever. But the case came down to whether or not some medical intervention was indicated to try to decompress the abdomen. That was your case. So this is not some little throwaway opinion by your opponent. It goes to the central part, as I read it, central opinion in your case. My issue is why wasn't it incumbent upon them? These rules are meaningless. 213F3 is meaningless. 213I is meaningless. If the defendant who's also present, the defendant's counsel who's also present at the deposition doesn't go into it, this opinion means something to their defense. Then it's incumbent upon them to take up, to elicit that from their witness who's at the deposition. They have to say, in effect, counsel never asked you about these disclosed opinions, and so I want to ask you about these disclosed opinions? Well, they don't have to say that, but they have to ask about the opinions. Really? That's how I read Rule 213I. Well, you may read it that way, and we will respectfully disagree with that and also suggest that the Spatzel case that my colleague mentioned seems to be pretty directly on point on this particular permutation of 213. If I may, to add just one more thing on the issue. Sure. And that's that the trial court, in deciding on the post-trial motions and in denying the plaintiff a new trial on the issue, he did comment or indicate that he was, quote, unquote, about the demonstrative and its inference. That was a basis that had never been disclosed and came in for the first time at the time of trial. Shall I move on to the next issue? Yeah. The next issue is the wrongful dismissal of Juror London. Juror London was dismissed by the trial court despite that there was no evidence of bias on the part of the juror. In deciding to dismiss the juror, the trial court acknowledged explicitly that there was no concrete evidence or overwhelming evidence of bias, and mere suspicion of bias is not enough to warrant dismissal of the juror. How are you prejudiced by the dismissal of this juror and her replacement by an alternate? I mean, let's just assume that Judge Goldberg did the wrong thing here and should have kept that juror on. Where's the prejudice? How can you prove it? She was examined at length in the voir dire prior to the commencement of trial. No, no. I know all that. Let's assume that at the end of all of the questioning that the judge should have discharged her but did not. My question is, how was your case prejudiced by the absence of this one juror and her replacement by an alternate? Based on the fact that there was no cause, and there would have been no cause if this were a pretrial voir dire, it entitled the defendants to an extra preemptory challenge that they would not have been entitled to. We all received five preemptory challenges at the outset of the trial. All five were used. And by doing the defendant's bidding for them, they wanted this juror gone. The trial court dismissed this juror without cause. That's an extra preemptory challenge that the plaintiffs were not entitled to. Would you concede that the juror disobeyed the trial court's instructions in regard to not communicating with the parties? Only with regard to the bless you, and it was truly a meaningless communication, and I think her testimony was very straightforward and honest on that topic, and I think that's the only communication that occurred. And she says bless you to everybody. She'd say it to the trial court. She'd say it to the defendant. Ms. Levin, would the judge be entitled under the abuse of discretion standard to take a different view of the nature of the communication than the one that you've just offered, that she was credible in what she said? I mean, how can we judge the opinion of the judge, the findings of the judge? We weren't there, and that's what the abuse of discretion standard that we have to employ would require us to do, to bow to the judgment of the person who was there, who watched the witness testify, listened to the witness testimony, and apparently believed that this witness had indeed violated an order and specifically said in his findings that this wasn't because of her religiosity, that he was striking her. He said it wasn't because of her religiosity, but then he mentioned her religiosity probably three times more than he mentioned any other. So are we to call the judge out and say we don't believe the judge when the judge gave his opinion as to why he was acting? Was that subterfuge on the judge's part that you're asking us to find? I'm not saying that at all. I'm saying that I think based on a reading of the transcript, based on being there, the most important issue for the judge was this woman's religiosity. He noticed at the outset that she had a Christian Bible with her. He said not. He said it wasn't his concern. He said it would be wrong to strike her because of her religious beliefs. But in his ruling he did make that part of his decision. He did say that he still had a concern despite all of her assurances, and I might add she was asked the same question about whether or not she'd be able to put the law before the Bible five times in five different ways, and answered honestly all five times. You can't accuse somebody who you know is so religious of lying under the oath of God. It just doesn't make sense. We're not judging her credibility. We are judging the reasonableness of the judge's ruling on her credibility, which is a different issue. And he asked her five different times if she could put the law before the Bible, and all five times she said that she would. She said she'd wait to deliberate. She said, that's next week, Your Honor. I haven't talked to anybody about this. I haven't made a decision yet. I'll wait until we get into that jury room. And despite that, she was still let go, and this was still a concern for the judge at the time he dismissed. He said on page 210, 108 of the testimony, and it's the report of proceedings with the void year that's an appendix to the plaintiff's brief, he does start with the orders and that he felt that they had been violated. But then he says that he still has concerns. Judge Epstein pointed out that we have the abuse of discretion standard, and where we're looking at here is at least a nominal violation of the trial court's instruction by the juror. How can we say that no other judge, no reasonable judge, would have ruled the way the trial court did in light of the fact that we have a violation? Because he disregarded the juror's assurances and the other case law that we've cited too. If all that was there, Ms. Levin, was the judge's feeling that she had disobeyed an order of the court, if that's all the basics of his opinion, how are we to say, as Justice House said, that that was an abuse of discretion to strike her, believing that she had violated an order of the court? Because there's no bias or prejudice shown to the defendant based on her void year for keeping it. But the problem we're having here, quite frankly, is that you're sort of urging us or encouraging us to decide this as if we were sitting there like Judge Goldberg was, a de novo review. That's not the standard. The standard is whether or not he abused his discretion and all the case law indicates that in order to sustain that burden, you would have to persuade us that no reasonable judge would have made the decision that Judge Goldberg did. And I think that's where you're coming up a little bit short. And maybe it would be a useful thing at this point to address your third issue respectfully. The third issue of our appeal is the sole proximate cause instruction that should have not been given in the long form. The defendant was not entitled to have the jury instructed on the long form of the sole proximate cause instruction because there was no evidence that the conduct of Dr. Ganju or any other non-party, any other physician to this case was the sole proximate cause of the plaintiff's injuries. The giving of the instruction requires that some evidence be there, that the conduct of a non-party was the sole proximate cause. How much is some is not really even an issue in this case where there was absolutely none. All the evidence demonstrated that both Dr. Beck and Dr. Ganju continued to manage the plaintiff's GI condition at all times from the time that Dr. Ganju was consulted until the time of the perforation. Dr. Ganju, he wrote orders and he made recommendations. And then Dr. Beck, he evaluated the patient and he, based on those evaluations, he either followed Dr. Ganju's orders or he didn't follow Dr. Ganju's orders. He still had discretion over the case and managed the case as well. And the defendant claims the argument that Dr. Ganju, he could have placed an NG tube during any of that time, between the time he came on to the case and the time of the perforation. And therefore, there's the evidence, there's the some evidence. Well, that's not true. So could have Dr. Beck. All of this is the epitome of proximate cause. Under the doctrine of proximate cause, it is not a defense that some party may also be to blame. During opening statements and during closing arguments, the defense counsel admitted and insists to the jury that no one else to blame. No one else was to blame for the plaintiff's injuries. And during the course of the trial, no evidence was brought to light showing that someone else, another physician or anyone else for that matter, was a proximate cause, let alone the sole proximate cause. Houlton is analogous to that case. In Houlton and in this case, the issue was whether the sole proximate cause instruction could be given where the defendant never implicates the conduct of a third party. How can we test this, that you were prejudiced by the instruction? If we assume, let's say that it can't be the sole proximate cause when you have two different actors allegedly not doing the same thing. You've got Ganju, is that how you pronounce it? Correct. At least that's how I say it. I'm sorry? I said correct, or at least that's how I say it. I'm not sure how I write. You have a doctor that's there for several days and then you have another doctor that comes in a little bit later, and each of them are basically put to task for failing to decompress the abdomen. So you have two actors, so you can't say that two could be sole. One has to be sole proximate cause. So let's assume that we go with you on that. How then can we establish that the plaintiff was prejudiced by this in the absence of any special interrogatory to test the jury's verdict? Well, that's the tricky part in this case where we're also alleging that the verdict as to negligence, if hypothetically speaking this case were decided on negligence alone, the standard of care was not deviated. Well, that was in the face of testimony that shouldn't have come in. That was a 213 violation. You want to go back to the issue that we've already shut the barn door on. I just want to talk about this. How can we figure out, looking at the record, everything that you've provided us with, that the erroneous giving of this sole proximate cause destruction, let's just assume that it should not have been given because factually there's no proof that there was one other person that was solely responsible for it. How can we establish that you were prejudiced by that based on the record that you've supplied us with? It seems like we're left with a little bit of speculation on that question. Well, I think there's always speculation when asked that question, but the answer as far as I'm concerned is that's all that the jury was left to decide with because of our position on the negligence issue in the 213. All right. Do you want to reserve some time for the bond? Yes, please. Thank you, Your Honor. Thank you. Thank you. Good morning again, Your Honors. Again, Karen DeGrand for Dr. Beck. May it please the Court, Counsel.  have recognized on each of these issues what I personally, and I think we set this out in our brief, establishes as an insurmountable obstacle for the plaintiffs that you have to take a step back, you have to put these errors, these alleged errors by the trial court into the context of the trial and establish substantial prejudice that affected the verdict. And we submit that the plaintiffs have not taken that step with respect to any of these errors that are offered by them in their brief and were urged and considered by the trial court. Again, the difficult standard to overcome in each case, or rather in the instance of each of the arguments is the abuse of discretion standard as well. On the Juror London issue, I believe the Court has articulated in the questioning of Plaintiffs' Counsel many of the points that were raised by the defense. And the one point that I also would raise to the Court that wasn't discussed in the opening part of the plaintiffs' presentation was the fact that, and again, the plaintiffs have said that because Ms. London was it's impossible, and they use that word impossible a couple of times in their reply brief, for the Court to have determined that she either wasn't credible or that she wasn't telling the truth. But the truth of the matter is, even by her own testimony, she was highly emotional. She cried during the voir dire. She was, by the account of several people under oath, defense counsel, and then also, of course, the pivotal testimony of the judge's own clerk. This juror was reacting and personalizing, frankly, by her loud comments during the course of the trial. So that's in addition to the issues of whether the Court had abused its discretion in determining that there was an instance or two instances of this juror violating the Court's explicit order not to try to communicate with the parties. So I, frankly, under any standard of review, let alone the abuse of discretion standard, I don't know how the Court's process could be questioned or criticized or how the findings could be questioned or criticized. And Judge Goldberg made very clear, particularly in the context of the hearing in the post-trial motion, that the tipping point for him was not the question of the juror being a religious individual, but rather was the testimony of his own clerk, who was not one of the defense attorneys and was not the court reporter, but his own clerk, who had certainly no bias, that he witnessed a communication between, or an attempt at communication by the juror to the plaintiffs while the parties and the judge were out of the room. And the case law is pretty clear on this point, I would say quite clear, that the abuse of discretion standard applies and that the Court has great discretion on these issues. And, of course, it has to be the way, because otherwise how could the Court manage a trial without having that discretion? So I think that the record quite clearly establishes not only that there could be no prejudice determined, but also that there was no abuse of discretion and, quite frankly, no error by the trial court on this issue. The alternate who took Juror London's place was never questioned as being fair by the Plaintiffs' Counsel at either the trial level or in this court or today at oral argument. On the 213 issue, unfortunately Justice Lavin stole my thunder by reading the 213 disclosure. I won't do it again, but in addition to the Court's well-taken points on the obligation of the Plaintiffs to explore the specifics of the disclosure at the deposition of Dr. Beck and the deposition of Dr. Soden, our position is that the opinions on standard of care and on causation were adequately disclosed. They're right there. It's very explicit on the standard of care, and the basis is quite explicit and quite detailed. Don't take my questions, Mr. Grand, as approval of a disclosure that says that the basis of opinion is my education, training, and experience, period. But that's not all that's there, Your Honor. And as to Dr. Beck, he also says it's based on his involvement with his patient, based on his custom and practice in treating similar patients and the medical records and all of his recollections. So it's not just the boilerplate custom, education, and experience. And the same is true of Dr. Soden. Yes, he uses the words custom, or rather education, training, and experience, but he also specifies the materials that he reviewed in this case. So I don't think it's a boilerplate. I think it's quite detailed. And certainly adequate to have preserved the right for the defense to bring these issues out during the trial. And there certainly could not be said to be any surprise or any abuse of discretion in the judge's rulings on this issue. And again, I would also want to point out to the court, the court probably is already aware of this, but the actual testimony at trial did not go into a basis. It went into, it was very, frankly, the testimony was quite brief on the subject, both as to causation and standard of care. And as far as demonstrating the tube, that's a factual matter. And certainly couldn't be said to have prejudiced the plaintiffs, especially in light of Dr. Forson's testimony about where that tube goes. So again, on the 213 issue, I feel that Judge Goldberg made the right decision, and not only the right decision, well satisfies the discretionary, his discretion in making those rulings, and in the overview of the case was very conscientious about going through, enforcing 213, and I think was quite even-handed about it as well. As far as the sole proximate cause issue, I find it surprising to hear counsel say that there was no testimony at all that went to the question of sole proximate cause. From the first words that were out of trial counsel's mouth in the opening statement, and this was something that was brought out through the testimony of Dr. Beck, Dr. Soden, Dr. Lucan, and of course Dr. Ganju himself, was that Dr. Ganju had taken over the management of the gastrointestinal issues two days before the colon rupture. So it was always, throughout the trial, the defense that the defendant was presenting to the jury, and of course the defendant did say that, or defense counsel did make the point that the defense was not blaming Dr. Ganju for finding fault or saying that he was negligent. But it was very clear from the testimony of all of those witnesses and from the argument of defense counsel, who specifically argued in closing argument, that if you accept Dr. Fortson's testimony, and Dr. Fortson himself stated on cross-examination that use of the nasogastric tube all the way up to the time of the rupture would have avoided this bad outcome. Clearly that's evidence that... But how is that sole proximate cause? If you're talking about two different medical actors at two different times, it sounds more like last clear chance. Are you trying to invoke the last clear chance doctrine in malpractice cases? I'm not, Your Honor. And I think the reason that I disagree with your phrasing it that way is we're saying that Dr. Beck was not the cause at all. We're not saying, gee, we think that two other people, their actions together combined to cause this. That's not what we're arguing. I know that the defense was not that it's not our fault, it's Dr. Ganju's fault, but the defense was if you believe the expert that an NG tube should have been given, it's all his fault because it happened later. He was there later. And I don't see how that implicates Dr. Beck, who was out of town at the time that that occurred as well. Dr. Beck was basically accused of failing to do the same thing that Dr. Ganju failed to do. That was Plano's position, but that wasn't our position, and we're entitled to have, the defense is entitled to have the jury instructed on his theory. Where is the sum evidence, as counsel correctly stated the standard, where is the sum evidence to the effect that Dr. Ganju was the sole or only cause, if you're talking about the identical theory that was levied against Dr. Beck? Is your theory that it's the sole cause simply because the gastrointestinal care was entrusted to Dr. Ganju? It was, well, I think that's possibly one way of putting it. I'm not sure I would use those words. I mean, it wasn't, it was the sole proximate cause because of the way that the plaintiff presented the case, which was to rely on this issue of the nasogastric tube, and then using that in combination with all of the defense testimony, including the testimony of Dr. Ganju, who said, I have responsibility for this aspect of the case at that point in time. So I don't see how that's not, that doesn't meet the sum evidence standard. Am I right that, I'm trying to understand this, that your theory is, even if it should have been used, the NG tube, it wasn't our call, it was his call because Dr. Ganju was the one who was in charge of that aspect of the care. It was, yes, it was. And that would be, in your view, some evidence that would justify the giving of the instruction? That's correct, Your Honor, that's correct. And in addition, even setting aside the fact that the jury certainly had ample evidence to draw that conclusion, there's no basis, even if the jury should not have been instructed on 1204, to conclude that the jury even reached the issue because it's a general verdict, there's no special interrogatories. Clearly, the defense throughout the trial was not only defending on the issue, on the defense of sole proximate cause, but was defending on the basis of the standard of care. So there's no way to conclude, and under this court's ample precedent on the two-issue rule, there's no way to reach the conclusion. How much is ample? You've got Judge Garcia's opinion, and what else? It's not just Robinson v. Boffa, Your Honor. It's also, well, it's not just this court. It's also the Supreme Court. It's the Lazenby case. I'm not disputing that there's precedent, but I'm just wondering how ample it is. I think it is ample. I think it's Kirklis. I think it's Bosco. I think it's Tabe v. Osmond. I think there is quite a bit of precedent that makes that principle quite clear. So if the court doesn't have further questions for me, I thank you for your time and ask the court to affirm the judgment that was entered on behalf of Dr. Beck in this case. Thank you very much. Ms. Levin. Thank you. Thank you, Your Honors. My first presentation was going to be in a lot better and more organized of a fashion, but I do want to address counsel's point. I'm going to try to do it in as most organized of a fashion as I can. First, because I began with the 213 issue, I'll address some of the points you made regarding the 213 issue. Counsel indicated that the disclosure of Dr. Beck and the disclosure of Dr. Soden was, quote, quite detailed, end quote. And that goes to our point. It was really detailed, and the one mention of the NG tube in that opinion, it was really lost in the mix. As far as we were concerned, it was inconsequential. It didn't have a basis. It wasn't something they were going to testify to. I just don't know how you can say that when that's your central theory of liability. I mean, if this was just some outlier opinion, I could maybe understand how it's just sort of thrown in the middle of something. But your case, the central aspect of your case, was that they didn't intervene to decompress the abdomen. And that's one of the things that could have been done to intervene. And at the time of trial, well, first of all, our expert disclosed that opinion. In his written disclosures, he testified to that opinion in his discovery deposition, and then he talked about that opinion at the time of trial in maybe more detail than he did in his disclosures. But there was no objection, and it was an adequate disclosure. And I guess my problem is that it's too great of a burden to put on the nondisclosing party to seek every basis that's not disclosed for an opinion or to assume that an opinion is going to come in at the time of trial when it doesn't have a basis and without a basis is purely speculative. What would be the problem, Ms. Levin, of saying, have you disclosed all in this deposition, have you mentioned all the bases of your opinion that an NG tube was not used? It wasn't a violation of the standard of care that it wasn't used? That question was probably asked. I'm with Mr. Marabali in a lot of depositions, and I also do read a lot of his depositions, and he usually asks, are those all the opinions you'll be testifying to at the time of trial, and are those all the bases for those opinions that you're going to be testifying to? And if the answer was not yes, I'm sure that he would have continued. If we assume that you're right on the 213 issue, that it wasn't adequately disclosed either in the interrogatory answers or in the deposition, what about the failure to ultimately object to trial? I don't think there was a failure. A sidebar was had on the issue, an objection was raised immediately, and the issue was dealt with in that sidebar. But if you have a motion in limine a trial to say that they shouldn't be allowed to get this evidence in and it's overruled by the trial court, and then the attempt of the lawyer to get the evidence in comes up again, isn't it incumbent on the person who's trying to keep it out and was unsuccessful at motion in limine a to again object for the record on the specific basis that you have to object on? That wasn't done here. It was, Your Honor, and I could point out the pages where it was done. I read the transcript. I read the record in detail. And when the ultimate question was asked, there was an objection. Mr. Mirabelli went up to the sidebar and some comments were made. But there was not an objection to the specific question when Dr. Soden testified to it. I actually made the comment. The most pressing issue for me is, or in our appeal, not just me personally, is that Dr. Beck's demonstrative evidence, he brought in a basis with his inflection, his tone, by pointing out that this is where the stomach is and way down here, this is where the perforation occurred, and this stomach way up here, that's where the NG tube goes. And it's imperative to note that it was me who said to the judge, I think they're trying to make the inference here that an NG tube would not have been effective to decompress the colon. That's why they're trying to use this demonstrative. And the judge adamantly said, no, they're not going to be allowed to do that. They will not be allowed to do that. That's not coming in. There's no evidence of that. And it did. And we were harmed by it. I think Justice Levin is trying to focus on just one question, and that was when Dr. Beck was asked would an NG tube have prevented colon perforation. And he says, in no way. And was there an objection at that point? The objection had come during Dr. Soden's testimony, which was just prior and dealt with in the sidebar. To both, both Dr. Beck and Dr. Soden, and the admissibility of this testimony was dealt with in that sidebar. Okay. That's my answer. All right. Thank you. I also just want to, lastly on this issue, just say that I think that no deposition would last three hours, and most witnesses would require redeposition if Rule 213F3 and Rule 213I, which puts the burden on the defendant, or the disclosing party, I should say, is not taken on its face. Moving on to the issue of Juror London, we talked and counsel talked about the abusive discretion standard, and I know that Justice Epstein asked the question about the communication, the bless you, and what if it were based on that alone. And I think in answering that question, I lost an important point, and that's that this court interjected religion into the inquiry. Religion was not, the issue of religion was not raised by anybody else, and sharing a religious faith with somebody is certainly not evidence of bias. Didn't she mention something to the effect that that's just how she uses her faith, when she's saying, you know, thumbs up, that she, you know, wasn't she the person that brought it up? In addition to carrying a Bible into the jury box. The trial court brought it up before she even stepped foot into chambers. The trial court said, okay, I've heard what you have to say, counsel, to both parties. Here's the concern that I have. I happen to notice that this woman was writing on a Christian Bible, and to me, that raised the issue of whether or not she'll be able to follow the law, as instructed by me, rather than what the Bible tells her to do. And then he asked her again, to the point of badgering, five times that same question in five different ways, and she answered all times she would follow the law and not what the Bible told her to say. Merely sharing religious faith with someone is certainly not evidence of bias. That's tantamount to saying that because she was the same race as the plaintiffs, then they had an affinity towards each other, and that's just not true. The purpose of the, I'm sorry. I was just going to say, once again, remember that so many of the decisions that we make in the appellate court, Ms. Levin, the first deal, first thing we deal with beyond whether we have jurisdiction, is what is our standard of review? And in order to say, as we've all tried to address in one way or another today, that no reasonable judge would have, having thought that there is a juror before him who was having difficulty following the orders of the court because she had indeed, in his view, violated an order of the court, it becomes very, very difficult for us to say that no reasonable judge could have either come to that conclusion or, having come to that conclusion, could make the decision to dismiss the juror. And even if we did believe those two things and might have ruled differently ourselves, what right would we have under an abuse of discretion standard to substitute our judgment for that of the trial judge? And even as Justice Levin asked, if we thought we had that and did disagree with what the judge said, where is the prejudice that we could reach? And those three problems, I think, in all candor, are insurmountable in this instance. The real abuse of discretion here, in addition to what else I've said, is interjecting religion into this process in the first place. At the outset, the voir dire was about finding out the meaning, if any, behind this communication. The judge, the trial court, had no right to interject religion into this proceeding. It was inappropriate for him to raise the subject and to examine the juror on the subject when nobody else raised it. If he saw a juror sleeping, would he have a right to do that, to inquire as to that? I suppose that would be a... Or reading any other book, would he have a right to inquire as to that? Yes, but this juror wasn't reading the Bible. No, but my point is, what a judge sees, the purpose of a voir dire is to see whether there are grounds to remove a juror or not. And what a judge sees, what a judge hears, which, incidentally, we can't see and we can't hear, will lead a reasonable judge to make inquiry. He did state clearly, I think, that regardless of what you're calling badgering and regardless of other statements, he did say that he was not excluding her for the reason that you're suggesting he was, which would require us to, A, ignore the other basis for the exclusion and to basically say, we don't believe you, judge, that you didn't decide this. You're asking us to do an awful lot here. And I just refer you that the last thing that the judge said when he dismissed this juror on pages 108 and 109, page 210 of the appendix, was reiterating his concern. He said, it's not a criticism of religion, but the law and the evidence has to dictate the result and jurors need to understand that. He disregarded her assurances that she understood that. And he raised the issue in the first place, which I think was inappropriate. In addition, with regard to the prejudice, in addition to allowing the defendant an extra preemptory strike above what the plaintiffs had, it tampered with the Jones' ability to have a trial by a jury of their peers and disrupted the composition of the jury. Thank you. Lastly, I just want to point out that I did note that when the judge's clerk testified about the thumbs-up sign, and that's one of the communications that the trial court referred to in his decision to let the juror go. And I know that she explained them away as raising her hands in the air and adamantly denied giving the thumbs-up sign. The trial court's clerk testified that unequivocally no other juror saw her make these motions. So I just thought that was important to point out. And the last issue I want to address is with regard to the prejudice on the proximate cause issue. I think the instruction confused the jury and let the jury believe that it was okay to decide that Dr. Ganju was the sole proximate cause, taking the burden away from the defendant of offering at least some evidence on that instruction. And I wish this weren't on the record, but seeing Dr. Ganju's testimony as we did in the courtroom, he wasn't a very likable witness. And I think that if the jury an excuse to find for somebody that they shouldn't have been entitled to testify. We have a record that we have to rely on. I'm sorry. This was an appellate court. He could have been a defendant in the case, but you folks chose to represent your client and settle with that defendant, right? Correct. Prior to trial. Yeah. Thank you. Very well. Thank you very much. Thank you. This case will be taken under advisement. We will issue a decision in due course. The case was interesting, well-argued, and well-briefed. Thank you. Thank you.